**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nicole Sereno,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-00227-TUC-RCC (MSA)<br>**ORDER** |

Plaintiff Nicole Sereno appeals the denial of her applications for disability insurance benefits and supplemental security income. The Court has reviewed Sereno's Opening Brief, the Commissioner of Social Security Administration's Answering Brief, Sereno's Reply Brief, and the Administrative Record ("AR"). (Docs. 13, 16, 22, 24.) For the reasons stated herein, the Court affirms the Commissioner's decision.

## I. Legal Standards

### *a. Disability Determination*

The burden of demonstrating disability lies with a claimant. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). An Administrative Law Judge ("ALJ") determines whether a claimant is disabled through a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. A claimant must show: (1) he has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) he has a severe impairment ("step two"); and (3) his impairment meets or equals a listed impairment ("step three"). *Id*. "If the claimant satisfies these three steps, then the claimant is disabled

and entitled to benefits." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015).

"If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's [Residual Functional Capacity ("RFC")]." *Id.* The RFC is "defined as the *most* that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms." *Stefanie S. v. Kijakazi*, No. 20-CV-1134-RBM, 2022 WL 594547, at *4 (S.D. Cal. Feb. 25, 2022) (quoting *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015)) (emphasis added).

After determining a claimant's RFC, the ALJ evaluates whether there are occupations the claimant could perform. *Id.* To do so, "[t]he ALJ relies on the [Dictionary of Occupational Titles ("DOT")], which is the [Social Security Administration's] primary source of reliable job information regarding jobs that exist in the national economy," and "the testimony of a vocational expert who describes the specific occupations a claimant may perform in light of that individual's RFC." *Stefanie S.*, 2022 WL 594547, at *4 (first quoting *Zavalin*, 778 F.3d at 845–46; then citing *Valentine*, 574 F.3d at 689). "After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Dominguez*, 808 F.3d at 405. Then, at stage five, "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

*b. Federal Court Review*

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008).

## II. Background

### *a. Procedural History*

Sereno applied for benefits in November 2021, alleging disability based on thoracic outlet syndrome, chronic migraines, nerve damage, chronic fatigue and weakness, arthritis, neck pain, and spinal stenosis. (AR 245, 252, 282.) Her applications were denied at the initial level in September 2022 and again at the reconsideration level in February 2023. (AR 67–68, 87–88.) Sereno appeared for hearings before an ALJ in October 2023 and March 2024. (AR 40, 60.) The ALJ denied Sereno's applications in a written decision in April 2024, and the Appeals Council denied review in April 2025. (AR 1, 16–33.)

### *b. Sereno's Medical History*

Sereno's primary diagnosis is for thoracic outlet syndrome, for which she had her first ribs surgically removed in 2013 and 2014. (AR 601, 714.) Sereno sought treatment for chronic pain primarily from Dr. Carlos Borras at Tucson Medical Center. From May 2018 through October 2022, Dr. Borras's treatment notes reflect that Sereno's thoracic outlet syndrome pain, chest wall pain, cervicalgia, and neuropathy were treated with pain medication and physical therapy. (AR 385, 392, 403–04, 409, 416–17, 421, 427–28, 432–33, 438–39, 444–45, 453, 458, 463, 468–69, 666, 737–38.) They further reflect that Sereno occasionally reported no musculoskeletal or neurological complaints and that her physical examinations were normal even when she did have complaints. (AR 383, 402, 414, 447–48, 456, 467; *see* AR 729–30, 812.) At some point, Dr. Chelsea Bravenec became Sereno's provider at Tucson Medical Center. Dr. Bravenec's records show that, in February 2024, Sereno had a normal physical examination and continued to be treated with pain medication and physical therapy. (AR 911–12, 916.)

As to physical therapy, a May 2019 treatment record shows that Sereno had reduced strength in her upper extremities and reduced range of motion in her cervical spine. (AR 589, 591.) A September 2019 record shows she had reduced strength in her shoulders and reduced range of motion in her cervical spine. (AR 579–80.) A June 2020 record shows that she had normal range of motion in her cervical spine and shoulders but reduced range

of motion in her thoracic spine. (AR 559.)

Sereno saw a chiropractor eight times between January and July 2021. Her initial examination was notable for reduced range of motion in her cervical and lumbar spine, observed pain on movement, and positive Cervical Compression, Soto-Hall, and Shoulder Compression tests. (AR 355–56.) However, Sereno had normal strength, reflexes, and sensation in her extremities. (AR 357–58.) Sereno's subsequent examinations continued to reflect reduced range of motion and observed pain, but also that Sereno was improving after each session and that the chiropractor recommended she increase her activity level. (AR 360, 362, 364, 366, 368, 370, 372–73.) Sereno later saw a chiropractor five times in January and February 2023. Her records again reflect reduced range of motion, observed pain on movement, and positive physical exam maneuvers, but with normal strength, reflexes, and sensation. (AR 782–84, 786, 788, 790.) The records further reflect Sereno's improvement after sessions and the chiropractor's recommendation that Sereno increase her activity level. (AR 786, 788–89, 790, 793.)

Imaging of Sereno's cervical spine in October 2019 showed "reversal [of] the normal cervical lordosis perhaps related to muscular spasm." (AR 518.) Imaging in January 2020 additionally showed spondylosis at several cervical disc levels but with no cord compression or significant neural foraminal stenosis. (AR 516.) Imaging in December 2021 showed no significant change since the January 2020 imaging. (AR 501.) Imaging of Sereno's left shoulder in March 2024 was unremarkable. (AR 932–33.)

*c. Dr. Jeri Hassman's Evaluation*

Dr. Hassman conducted a consultative examination of Sereno in August 2022. (AR 714–20.) Sereno "had a slightly positive Adson's test for subjective tingling down the arms but no change in her radial or ulnar pulse," and "[w]ith rotating her head to her left, she had increased tingling down bilateral medial forearms and bilateral fourth and fifth fingers." (AR 715.) However:

> She had full range of motion of both upper extremities without pain. She had no swelling, warmth, or tenderness of the shoulders, elbows, wrists, or fingers. She had a negative Phalen's test bilaterally, a negative Finkelstein's

> test bilaterally, and a negative Tinel's sign at both anterior wrists and medial elbows. She had normal coordination of the fingers and normal serial finger tapping of each finger to the ipsilateral thumb. There was no muscle atrophy. She had normal manual dexterity both hands without any tremor. Neurological examination of both upper extremities was normal. Sensory exam was normal, but claimant said she has frequent numbness and tingling down the medial forearms and medial hands and into the fourth and fifth fingers.
>
> . . . .
>
> . . . .
>
> Examination of the thoracic and lumbar spine showed the spine was straight and nontender. She had no muscle spasm or hypertonicity of the paraspinal muscles. She had full range of motion of the lumbar spine without pain. Straight leg raising test was negative bilaterally.

(AR 716.) Sereno also had a "[n]ormal physical exam of the cervical spine." (AR 716.)

On a checkbox form, Dr. Hassman opined that Sereno was limited in her ability to lift and carry, and that she could only "occasionally" reach. (AR 717–18.) Dr. Hassman supported her opinions with the following explanation: "[h]istory of bilateral thoracic outlet syndrome and history of corrective surgery for same. Frequent tingling down bilateral medial forearms." (AR 717–18.)

*d. Sereno's Symptom Testimony*

In function reports, Sereno reported she had "extremely bad" neck, shoulder, and lower back pain and "very bad" nerve pain in her arms and hands. (AR 293–94, 319.) She reported problems with lifting, reaching, using her hands, squatting, bending, walking, and sitting. (AR 298, 312, 317.) She was able to care for her young child, prepare crockpot and frozen meals, do household chores, drive a car, shop in stores alone, and attend her child's school and sporting events, although she needed frequent breaks and help with certain tasks. (AR 294–97, 300, 312–16.) She reported pain-related anxiety, depression, and difficulty sleeping. (AR 293, 313, 316.)

At the ALJ hearing, Sereno testified that she felt constant, aching pain in her neck, shoulders, arms, legs, and lower and upper back. (AR 49–50.) To deal with her pain, she elevated her legs, applied ice and heat, and used a neck brace a few hours every day.

(AR 51–52.) She had problems sleeping because of pain and had pain-related anxiety and depression. (AR 48, 50.) She stated she was able to do a couple of chores every day without help but later clarified that her ability to do chores varied depending on whether it was a good or bad day. (AR 46, 51.) She also stated she exercised by walking outside for up to 30 minutes and going to the gym to do a stationary bicycle for up to 20 minutes in 5-minute increments. (AR 46–47.) She estimated that she could stand or sit for up to 30 minutes and lift no more than 15 pounds. (AR 49.)

*e. Commissioner's Decision*

At step one, the ALJ found that Sereno had not engaged in substantial gainful activity since March 1, 2019, her alleged onset date. (AR 19.) At step two, the ALJ found that Sereno's thoracic outlet syndrome, degenerative joint disease of the left knee, degenerative disc disease of the cervical spine, and chronic pain syndrome were severe impairments. (AR 19.) The ALJ found that Sereno's pain-related depression and anxiety were nonsevere. (AR 20.)

At step three, the ALJ found that Sereno's impairments did not meet or equal a listed impairment. (AR 22.) Next, the ALJ found that Sereno had the RFC to perform light work, except she could occasionally climb ladders, crawl, and reach overhead bilaterally; frequently reach in all other directions bilaterally; and frequently engage in fine feeling bilaterally. (AR 25.) At step four, the ALJ found that Sereno could perform her past relevant work as a customer service representative and demonstrator. (AR 31.) In the alternative, the ALJ found that Sereno could adjust to other work as a routing clerk, small products assembler, and office helper. (AR 32.) The ALJ found that Sereno is not disabled. (AR 32.)

## III. DISCUSSION

Sereno argues that the ALJ erred in discounting her symptom testimony and in assessing Dr. Hassman's medical opinion. (Doc. 16 at 2.) The Court is not persuaded.

*a. Symptom Testimony*

"An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ found Sereno's impairments could reasonably be expected to cause her alleged symptoms, and the ALJ did not identify evidence indicating she was malingering. (AR 27.) The ALJ therefore had to provide clear and convincing reasons for discounting Sereno's testimony.

The ALJ found Sereno's testimony inconsistent with her conservative treatment history. (AR 27–28.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (alteration in original) (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)). Here, Sereno alleged extreme limitations, including an inability to stand or sit for more than 30 minutes or lift more than 15 pounds. (AR 49.) But as the ALJ noted, the record shows that, from 2018 to 2024, Sereno's pain was treated primarily with medication and physical therapy. (AR 27–28, 385, 392, 403–04, 409, 416–17, 421, 427–28, 432–33, 438–39, 444–45, 453, 458, 463, 468–69, 666, 737–38, 916.) The ALJ also noted that she occasionally sought chiropractic care. (AR 28, 354–73, 782–93.) This treatment history reasonably supports an inference that Sereno's conditions, while symptomatic, were not as functionally limiting as she alleged. At the least, it was rational for the ALJ to reach that conclusion. *See Smartt*, 53 F.4th at 500 (affirming the rejection of symptom testimony based on conservative treatment in the form of pain medication and physical therapy); *Burkstrand v. Astrue*, 346 F. App'x 177, 178 (9th Cir. 2009)

(chiropractic treatment).

Sereno argues that "[r]emoval of part of one's skeletal system is not 'conservative' treatment, whatever may happen after." (Doc. 16 at 12.) Her surgery, however, occurred long before the disability period. The ALJ did not err in focusing on her course of treatment during the relevant period. Sereno also argues that her treatment is not inconsistent with her testimony because her condition has "plateaued." (*Id.*) This interpretation of the record, even if reasonable, does not displace the ALJ's interpretation, which is also reasonable. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ also found Sereno's symptom testimony inconsistent with the objective medical evidence. (AR 27–28.) "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498. Again, Sereno alleged substantial limitations across virtually every major area of physical functioning, including sitting, standing, lifting, and reaching. (AR 298, 317.) Yet, as the ALJ observed, imaging showed only mild findings and Sereno's physical exams were largely normal. (AR 27–28.) The ALJ provided numerous examples. (*See* AR 27–28 (citing AR 501 (mild cervical spondylosis in late 2021); AR 383 (normal musculoskeletal findings in early 2022); AR 669 (mild degenerative disease of the left knee in mid-2022); AR 715–16 (normal sensation, range of motion, strength, and dexterity in mid-2022); AR 730 (normal musculoskeletal findings in late 2022); AR 912 (normal musculoskeletal findings in early 2024)).) It was rational for the ALJ to find that such findings were inconsistent with Sereno's testimony about extreme physical limitations. *See Smartt*, 53 F.4th at 498 (stating the Ninth Circuit has "affirm[ed] an ALJ's rejection of allegations of disabling pain based on normal physical examinations"); *Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (affirming the rejection of testimony about back and leg pain as "inconsistent with evidence" of "mostly normal examinations").

Sereno argues the objective findings are not inconsistent with her testimony given

that she was "continually prescribed opioid pain medications to address her known pain generator of thoracic outlet syndrome." (Doc. 16 at 10.) But although the prescriptions show Sereno had pain requiring treatment, it does not follow that Sereno had the degree of limitation she alleged. The ALJ rationally considered the medications in the context of the longitudinal record, including Sereno's largely normal clinical findings and conservative course of treatment. Sereno's argument that the medications support a greater degree of functional limitation is at most a competing interpretation of the evidence that does not displace the ALJ's rational interpretation.

Sereno further argues that the normal physical exams are not inconsistent with her testimony because the exams represent only a snapshot of her functional ability, whereas she testified that sustained activity caused her pain. (Doc. 16 at 10–11.) This does not mean the ALJ could not rely on the exams. Again, Sereno alleged extreme limitations in many areas of physical functioning. Even if the exams did not test her tolerance for sustained activity, they were still relevant evidence concerning the severity of her impairments and the extent to which they limited her. Further, the ALJ did not outright disregard Sereno's testimony; the ALJ limited her to light work with reduced reaching. This was a reasonable reconciliation of Sereno's testimony and the longitudinal record's normal and abnormal findings. (*See* Doc. 22 at 5–6.)

Sereno's conservative treatment history and normal physical exams constitute clear and convincing reasons for discounting her symptom testimony.

*b. Dr. Hassman's Opinion*

"Under governing regulations, the ALJ must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Hassman opined on a checkbox form that Sereno was limited to "occasional" reaching. (AR 718.) In response to the question "[o]n which of your findings have you based these conclusions," Dr. Hassman wrote: "History of bilateral thoracic outlet syndrome and history of corrective surgery for same. Frequent tingling down bilateral medial forearms." (AR 718.) The ALJ found Dr. Hassman's opinion "generally persuasive" but was not fully persuaded by Dr. Hassman's reaching opinion. (AR 29.) The ALJ addressed the supportability factor, finding that Dr. Hassman's opinion "lacks proper support as the only findings cited were the claimant's subjective complaints of tingling and numbness" and "did not distinguish between overhead and other types of reaching." (AR 29.) An ALJ may properly reject a medical opinion on the ground that it is not supported by the doctor's own clinical findings, or that it lacks supporting explanation. *Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023). Thus, the ALJ could rationally find Dr. Hassman's opinion less persuasive because it was based on Sereno's subjective complaints and lacked an adequate supporting explanation.

The ALJ also addressed the consistency factor, finding that Dr. Hassman's opinion that Sereno was limited to occasional reaching in all directions was not supported by the longitudinal record, which "show[ed] only subjective notations of thoracic outlet syndrome and mild diagnostic and clinical findings of degenerative disc disease of the cervical spine." (AR 29.) As explained above, the ALJ rationally concluded that the objective medical evidence was inconsistent with the extreme degree of limitation alleged by Sereno. The ALJ could rationally find such evidence also inconsistent with Dr. Hassman's opinion that Sereno was significantly limited in her ability to reach in all directions.

Sereno argues the ALJ's supportability analysis is defective because her positive Adson's test is objective evidence, not a mere subjective complaint. (Doc. 16 at 14; Doc. 24 at 4–5.) But Dr. Hassman herself stated the test was "slightly positive . . . for subjective tingling down the arms but no change in her radial or ulnar pulse." (AR 715.) Moreover, the Adson's test has an objective component; a positive test occurs when "with deep inspiration there is a diminution or total loss of radial pulse on the affected side." *Adson Test*, Stedman's Medical Dictionary 1798 (27th ed. 2000). The objective component was negative in Sereno's exam. The ALJ could rationally find that a test that was only "slightly positive" for "subjective tingling" did not support Dr. Hassman's opinion.

Next, Sereno argues the ALJ's consistency analysis is "inadequately explained" because it is not supported by citation to the record and "[m]ild diagnostic and clinical findings about degenerative disc disease of the cervical spine combined with ongoing thoracic outlet syndrome could reasonably result in a limitation on reaching in all directions." (Doc. 16 at 14; *see* Doc. 24 at 6.) But the ALJ had previously summarized the medical record and provided pincites to the record when discounting Sereno's testimony as inconsistent with mild imaging and normal clinical findings. (AR 26–28.) It is clear the ALJ was relying on that earlier summary and analysis. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating a reviewing court may draw rational inferences about an ALJ's reasoning). Finally, Sereno says "nothing in the record" supports a distinction between overhead reaching and other types of reaching. (Doc. 16 at 14.) This is incorrect. The state-agency doctors opined, based on findings in the record, that Sereno could reach overhead only occasionally and reach in other ways frequently. (AR 75, 95–96.) The ALJ adopted their opinions as well-supported and consistent with other evidence. (AR 28–29.)

The ALJ explained how she considered the supportability and consistency factors, and her findings were rational. Therefore, the ALJ's evaluation of Dr. Hassman's opinion is supported by substantial evidence.

## IV. CONCLUSION

The ALJ's decision was supported by substantial evidence and free from legal error.

Accordingly, IT IS ORDERED:

1) The referral of this case to Magistrate Judge Aguilera is WITHDRAWN.

2) The Administrative Law Judge's final decision is AFFIRMED.

3) The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 17th day of August, 2026.

Honorable Raner C. Collins
Senior United States District Judge